1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| DONALD BROWN, individually,<br><br>        Plaintiff,<br><br> vs.<br><br>JASON CANNON; KEITH CZULEGER; BRIAN DANLEY; JORDAN FELDMAN; KEVIN GILL; BRIAN MARKERT; JEFF MARTIN; RYAN MICENKO; RYAN MOODY; CHRIS WESTBY; CITY OF FIFE; CITY OF LAKEWOOD; CITY OF PUYALLUP; PIERCE COUNTY; PIERCE COUNTY METRO SWAT TEAM; and JOHN DOES 1 through 10,<br><br>        Defendants. | NO.<br><br>**COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983 AND WASHINGTON LAW**<br><br>JURY DEMAND |

COMES NOW the plaintiff, Donald Brown, by and through his attorneys of record, Jeffrey O. Musto of Van Siclen, Stocks, & Firkins, P.S., Inc., and allege as follows:

## I.  INTRODUCTION

1.1  In September 2018, the Defendants acted negligently, recklessly, and outrageously by violating Plaintiff Donald Brown's constitutional rights and using unreasonable and excessive

COMPLAINT FOR DAMAGES - Page - 1

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

force against him.

1.2    The Defendants inappropriately escalated what could have been resolved with a suitable response to a medical and/or mental health crisis into a roughly nine hour ordeal which culminated in officers using an explosive device to enter a bathroom in an apartment where Plaintiff Donald Brown was staying after he had awoken from a black out; throwing a flash bang into the small, enclosed bathroom which landed on his foot and exploded; using a K9 unit that bit and tore at Plaintiff Donald Brown's left arm; beating Plaintiff Donald Brown while he was lying on his back in the bathtub, landing at least ten to sixteen blows on his body and head; and tasing him in the back for an extended taser cycle.

1.3    On this day, Plaintiff Donald Brown was experiencing a medical and/or mental health crisis during which he had gone in and out of consciousness and did not understand what was going on. Instead of recognizing the medical issue that Plaintiff Donald Brown's partner, Vaniti Brooks, had communicated to them and attempting to address this issue, the Defendants took every opportunity to escalate the situation without a reasonable basis and used unnecessary and excessive force on Plaintiff Donald Brown. Defendants concluded Plaintiff Donald Brown was holding a roommate hostage without any basis, that he had barricaded himself in the apartment despite overwhelming evidence suggesting otherwise, and exerted excessive and unnecessary force on Plaintiff Donald Brown.

1.4    Instead of trying to de-escalate the situation or identify what was truly going on and that there was not a "hostage" crisis or any weapons in Plaintiff Donald Brown's possession, Plaintiff Donald Brown was met with a militarized police response involving a SWAT team for about nine hours.

COMPLAINT FOR DAMAGES - Page - 2

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

1

## II.   PARTIES

2.1   Plaintiff Donald Brown, at all times material herein, resided in Pierce County, Washington.

2.2   Defendant Jason Cannon is a police officer employed by the City of Lakewood and a member and agent of the Pierce County Metro SWAT Team (hereinafter "Metro SWAT"). Defendant Cannon was working under color of state law and within the course and scope of his employment and agency at all relevant times described herein.

2.3   Defendant Keith Czuleger is a police officer employed by the City of Lakewood and a member and agent of Metro SWAT. Defendant Czuleger was working under color of state law and within the course and scope of his employment and agency at all relevant times described herein.

2.4   Defendant Brian Danley is a police officer employed by the City of Lakewood. Defendant Danley was working under color of state law and within the course and scope of his employment and agency at all relevant times described herein.

2.5   Defendant Jordan Feldman is a police officer employed by the City of Lakewood and a member and agent of Metro SWAT. Defendant Feldman was working under color of state law and within the course and scope of his employment and agency at all relevant times described herein.

2.6   Defendant Kevin Gill is a police officer employed by the City of Puyallup and a member, agent, and Commander of Metro SWAT. Defendant Gill was working under color of state law and within the course and scope of his employment and agency at all relevant times described herein.

COMPLAINT FOR DAMAGES - Page - 3

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

2.7     Defendant Brian Markert is a police officer employed by the City of Lakewood and a member, agent, and Commander of Metro SWAT. Defendant Markert was working under color of state law and within the course and scope of his employment and agency at all relevant times described herein.

2.8     Defendant Jeff Martin is a police officer employed by the City of Lakewood. Defendant Martin was working under color of state law and within the course and scope of his employment and agency at all relevant times described herein.

2.9     Defendant Ryan Micenko is a police officer employed by the City of Fife and a member and agent of Metro SWAT. Defendant Micenko was working under color of state law and within the course and scope of his employment and agency at all relevant times described herein.

2.10    Defendant Ryan Moody is a police officer employed by the City of Lakewood and a member and agent of Metro SWAT. Defendant Moody was working under color of state law and within the course and scope of his employment and agency at all relevant times described herein.

2.11    Defendant Chris Westby is a police officer employed by the City of Lakewood and a member and agent of Metro SWAT. Defendant Westby was working under color of state law and within the course and scope of his employment and agency at all relevant times described herein.

2.12    Defendant City of Fife is a municipality within the State of Washington and employed some police officers who responded to the September 23, 2018, incident involving Plaintiff Donald Brown described herein. The civil rights violations delineated herein were proximately caused by Fife's customs, policies, and usages and the decisions of its policymakers.

2.13    Defendant City of Lakewood is a municipality within the State of Washington and

COMPLAINT FOR DAMAGES - Page - 4

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

employed some police officers who responded to the September 23, 2018, incident involving Plaintiff Donald Brown described herein. The civil rights violations delineated herein were proximately caused by Lakewood's customs, policies, and usages and the decisions of its policymakers.

2.14    Defendant City of Puyallup is a municipality within the State of Washington and employed some police officers who responded to the September 23, 2018, incident involving Plaintiff Donald Brown described herein. The civil rights violations delineated herein were proximately caused by Puyallup's customs, policies, and usages and the decisions of its policymakers.

2.15    Defendant Pierce County Metro SWAT is a "special weapons and tactics" team and an entity composed of police officers from several municipalities within Pierce County and created by interlocal agreement making it a jural entity. Metro SWAT selects its members, creates policies and procedures, trains its own members, compiles and/or maintains its own records, and is a separate entity from the participating municipalities that provide its officers. Metro SWAT's agents and policymakers, including but not limited to Defendants Cannon, Czuleger, Feldman, Gill, Markert, Micenko, Moody, and Westby, responded to the September 23, 2018, incident involving Plaintiff Donald Brown described herein. The civil rights violations and Washington state claims delineated herein were proximately caused by Metro SWAT's customs, policies, and usages.

2.16    John Does 1 through 10, are entities and persons involved with Pierce County Metro SWAT team, the City of Fife, City of Lakewood, and the City of Puyallup who were involved with the unconstitutional, reckless, wanton, unreasonable, and intentional acts described

COMPLAINT FOR DAMAGES - Page - 5

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

herein. These entities and persons are not currently known to Plaintiff. Upon discovery of their identifies, Plaintiff reserves the right to add them as Defendants in this cause of action.

### III.     JURISDICTION AND VENUE

3.1     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.2     Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C § 1391 because at least some of the defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged herein occurred within the Western District of Washington.

### IV.     STATUTORY COMPLIANCE

4.1     On or about July 16, 2021, administrative claims for damages were served upon the Defendants.

4.2     Any prerequisites to the maintenance of this action imposed by RCW 4.96, *et seq*, have accordingly been satisfied.

### V.     STATEMENT OF FACTS

5.1     On or about Sunday, September 23, 2018, Plaintiff Donald Brown was with his partner, Vaniti Brooks, and her sister, Lori Hawthorne, at an apartment in Lakewood where they were living at the time – the Oakridge Apartments located at 8022 83rd Avenue SW, Lakewood, WA 98498.

5.2     As Vaniti and Donald were having breakfast together, Donald began to act unusually, make incoherent statements, and appeared to be talking to people who were not in the room. After trying to calm him down, Vaniti concluded that Donald was going through some sort of medical or mental health issue, or having a reaction to medications he had been taking, that she

COMPLAINT FOR DAMAGES - Page - 6

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

did not understand and could not identify. She decided to call 911 for an ambulance, which she described as an aid car.

5.3     At a little before 6:45 a.m., Vaniti Brooks called 911 to indicate that she needed assistance and to request an aid car for her partner, Donald, who she reported had "snapped." During the initial call, Vaniti indicated to the dispatcher that Donald had a gun. Although Vaniti reported that she believed Donald had a gun, there was no such gun. It would ultimately turn out that there was only a bb gun in the trunk of a vehicle and a plastic fake gun in the apartment.

5.4     The Lakewood Police Department was the first to respond and the other Defendants and Metro SWAT would later be called to the scene. When law enforcement officers initially arrived at the scene, including Officer Brian Danley, Vaniti was surprised. She expected that an ambulance and EMTs would respond to her request for an aid car, not law enforcement officers. She met the responding officers outside of the apartment building and tried to bring them up to the apartment to help calm Donald down. However, the responding officers did not let her return to the apartment and instead immediately brought her to their patrol car and placed her in the back of the car.

5.5     When Vaniti was isolated from the apartment and Donald, in the back of a police car, she tried to convey to the officers who responded to the scene that Donald was going through what she thought might have been some sort of mental health crisis or a bad reaction to prescription medication he was on at the time. She informed the officers that Donald had been on anxiety medication and was participating in methadone therapy in an attempt to overcome and recover from addiction.

5.6     Further, when the officers arrived on the scene, Vaniti did not convey to them that

COMPLAINT FOR DAMAGES - Page - 7

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

Donald had threatened anyone in the apartment with a gun or that he even had it on his person. She only conveyed to the officers that she thought there was a gun somewhere in the apartment so that they were aware of its possible presence in the apartment.

5.7     Vaniti told the officers these things to try to clarify what she thought happened, express that she was concerned for Donald, and make it clear that she felt he needed medical help and not an armed police response. She told them he was acting incoherently, may have been hallucinating and seeing people in the apartment who were not there, and that she had never seen him act in this manner in the past. She tried to be very clear with the officers that Donald had not acted like this previously, was never violent with her or with her sister, Lori Hawthorne, and that he was just confused.

5.8     Vaniti conveyed to the officers that her sister, Lori Hawthorne, was still inside the apartment and that she had down syndrome. At no point did Vaniti indicate that Lori was being held hostage or that she thought she was in danger. Nor was there any evidence that Donald was forcibly keeping Lori in the apartment against her will or that he was threatening her or Vaniti.

5.9     Despite this, the responding officers appear to have immediately treated it like a hostage situation and set up an "emergency entry/rescue team that consisted of four to five officers."

5.10    Instead, there were in fact many indications that Donald was going through a mental health or medical crisis and did not understand what was going on. Officers tried to communicate with Donald by calling Vaniti's cell phone, which was still inside the apartment. Officers reported that he answered the phone but could only be heard panting and grunting. After about twenty minutes of the line being open without much communication occurring, they heard Donald get on

COMPLAINT FOR DAMAGES - Page - 8

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

the line and ask, "What is going on? Did I pass out?"

5.11    A short time later officer indicated that he started screaming, changed his tone, and indicated that he had to take off his shirt because it had vomit on it, and that he would put on shorts and come out. Presumably because of his confused and blacked out state, Donald did not come out. There are, however, no reports indicating that he threatened Vaniti or Lori during any of the officers' attempts to contact him.

5.12    After only about an hour, Metro SWAT and the other Defendants were called to the scene. At this time, the officers on the phone with Donald were instructed to hang up the phone so that Metro SWAT negotiators could be briefed. Metro SWAT Commanders, Defendants Brian Markert and Kevin Gill, as well as Defendant Chris Westby, arrived on the scene and were part of the team supervising, ordering, and authorizing the ensuing actions of the Defendants.

5.13    Neighboring apartments were evacuated.

5.14    Once it became clear to Vaniti that the law enforcement response was way out of proportion to what had occurred, she tried to talk to the officers and tell them that a SWAT team was not necessary. She said numerous times that he was never violent and that she felt he was just confused at the time.

5.15    Vaniti also indicated to officers that the door to the apartment was left open and unlocked. Nevertheless, the responding officers continued to escalate the situation.

5.16    During the ensuing nine hour ordeal, police officers do not appear to have ever observed Donald with a gun or other weapon in the apartment or obtained any evidence to suggest Donald was threatening Lori Hawthorne. At 8:22 am, there were reports that there were "still no threats." In spite of this, breachers began making an explosive hinge charge at 8:25 am. Further,

COMPLAINT FOR DAMAGES - Page - 9

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

Vaniti repeatedly told officers that she did not actually see Donald with a gun, which was recorded at least once in officers' records at 8:58 am.

5.17    When Metro SWAT arrived at the scene with two armored vehicles, they were strangely told that Donald was armed and that he had barricaded himself in the apartment. It is unclear where the determination that Donald barricaded himself in his apartment came from, but it seems to have stemmed from officers hearing "sounds of items being moved that could indicate he was barricading the door."

5.18    In fact, there was no evidence that Donald had barricaded himself in the apartment, which could have been easily disproven or verified had the officers checked the door or listened to Vaniti. Vaniti told the officers multiple times that the door was open and not locked. Further, when officers later attempted to throw a phone near the apartment's door to communicate with Donald, at about 10:05 am, they noticed that the apartment's front door was partially ajar.

5.19    About 10 minutes later, at 10:14 am, officers prepared a robot to enter the apartment. When members of the SWAT team used the robot to gain access to the interior of the apartment a short time later, the robot only needed to nudge the door open in order to place the throw phone inside the apartment. There are numerous notes in the CAD logs and police records that the front door to the apartment was open. There was no barricade.

5.20    By about 11:10 am, the officers had cleared the living room, kitchen, and hallway of the apartment. At about noon, officers began to make contact with Lori Hawthorne in the apartment using the robot. There was no indication at this time that Lori was being held or threatened by Donald. There are no records indicating Donald was even seen near Lori. At a little before 12:30 pm, Lori exited the apartment. Again, there was no evidence of any barricade or that

COMPLAINT FOR DAMAGES - Page - 10

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

she had been held hostage.

5.21    At this point, any supposed threat of harm to others was minimized or eliminated as the only person left in the apartment was Donald and the surrounding apartments had been evacuated.

5.22    When Lori exited the apartment, officers questioned her about where Donald was in the apartment. Officers reported that she was difficult to communicate with, but reported that she said she thought Donald was inside the bathroom and that he might have had a knife and/or pistol with him. Again, no officer observed him with either a knife or a gun.

5.23    A short time before this, Donald had come back into consciousness to an extent and was very confused about what was going on. He woke up naked, without pants on and having to go to the bathroom. This is how he ended up in the bathroom of the apartment.

5.24    The next thing he knew, the lights to the bathroom had been shut off, which left it pitch dark in the bathroom and officers were yelling at him to exit the bathroom and that he was under arrest.

5.25    Donald was still dazed, but responded by saying that he was naked and wanted pants in order to exit the bathroom. Instead of talking with him, officers began preparing to breach the bathroom door.

5.26    At around 1 pm, the Defendants began positioning themselves in the apartment to arrest Donald. Officer Keith Czuleger and his K9 unit, Ranger, were ordered to enter the apartment as part of the arrest team. The deployment of the K9 unit into the bathroom was pre-planned to be used in detaining Donald. SWAT placed "several pieces of ballistic protection" in the living area. Long before this point, the use of an explosive charge had been authorized for the purpose of

COMPLAINT FOR DAMAGES - Page - 11

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

breaching.

5.27    The next ten minutes would be scenes out of a nightmare for Donald. At 1:15 pm, officers set the explosive charges on the bathroom door and detonated them. When the explosion went off, it did not open the bathroom door fully. At this point, Donald tried to open the door and could be heard continuing to try to communicate with the officers. Officers could see Donald trying to open the door from the inside but could tell he could not get the door open. Officers could also hear Donald trying to communicate with him. However, officers proceeded to open the bathroom door completely with the use of a breaching ram.

5.28    Next a flash bang was thrown into the small, enclosed space of the bathroom. It landed on Donald's foot and exploded. In quick succession, once the bathroom door was completely open and the flash bang was thrown into the bathroom, Officer Czuleger deployed his K9 unit into the bathroom.

5.29    The use of a K9 unit is one of the most severe levels of force short of lethal force and should only be used as a last resort. Instead, it was used as one of the first means of apprehending Donald once the bathroom door had been breached.

5.30    The K9 unit brutally bit Donald on the left forearm and tore at his skin and arm. Donald fell backwards into the bathtub and experienced excruciating pain because of the dog bite. He struggled to get the dog off of him.

5.31    Immediately following the K9, Officers Ryan Micenko, Jason Cannon, and Ryan Moody entered the bathroom. They observed that Donald was lying in the bathtub being bitten by the K9. From Donald's perspective, it appeared that one of the officers was trying to force the K9 unit to continue biting Donald's left arm. In response, the K9 released its bite, turned around, and

COMPLAINT FOR DAMAGES - Page - 12

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

bit Officer Cannon on the left calf.

5.32    Instead of trying to take Donald into custody at that time, Officer Micenko concluded that a "fast progression of force was needed." He came to this conclusion despite the fact that before the bathroom was breached, Donald was trying to communicate with the officers and exit the bathroom, that a flash bang had been used, that Donald had been bitten by a K9 unit, and that he was lying in the bathtub because he had fallen over. Officer Micenko began punching Donald in the body and face while he was in the bathtub.

5.33    By his own admission, Officer Micenko punched Donald at least ten to sixteen times in the body and head. He began by delivering "volleys" of punches two to three times at Donald's body. He then hit Donald in the head and face two to three more times. He then continued with yet another three to five volleys of strikes to Donald's body, and another three to five volleys to Donald's face and head.

5.34    While all of this was going on, officers were yelling at Donald not to resist, but he was not resisting. He was on his back in the bathtub after having been flash banged, being bitten by a dog, and then being hit in the face and body.

5.35    Donald remembers that while the officers were hitting him, he heard the officers say, "I'm not going to kill you, but I'm going to make you wish you were dead, A-rab." He also heard the officers call him a towel head and told him to "get out of my country." Through all of this, Donald felt extreme fear and believed he was going to die.

5.36    Once the officers stopped beating Donald, he heard one of the officers ask, "Did you get everything you needed out of this?" Presumably this was directed at one of the other officers. Another officer replied by saying, "Well, I have never tased anyone." In response, the

COMPLAINT FOR DAMAGES - Page - 13

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

1

2

3       original officer said, "Then tase him."

4           5.37    It was at this point that Officer Jordan Feldman apparently felt the need to deploy

5       his taser on Donald. A taser should *only* be used when necessary to overcome resistance while

6       affecting an arrest, preventing an escape, in self defense, or in defense of another person from

7       physical harm. It is not appropriate to use a taser punitively or for the purpose of coercion.

8           5.38    There was still no evidence that Donald had a gun or a knife in his possession.

9       Donald was lying in the bathtub defenseless and broken. There was no exit in the bathroom, so

10      there was no risk of flight. Instead, he was naked and afraid in the bathroom and had been

11      brutalized.

12          5.39    Nevertheless, Officer Feldman deployed the taser probes into Donald's *back*. In

13      other words, he was not a threat and was not even facing the officers when the taser was deployed.

14      Despite these facts, Officer Feldman not only let the taser cycle for a few seconds, but he held the

15      taser trigger down for *an extended cycle* of 10-15 seconds. This was absolutely uncalled for and

16      an absurdly excessive misuse of force.

17          5.40    In the end, Donald was subjected to a level of force that far exceeded what was

18      reasonable and necessary to control and/or subdue him.

19          5.41    Donald experienced seizures while being taken into custody; presumably because

20      of the sick cocktail of abuse, excessive force, the trauma and blows to the head, and tasing that he

21      suffered. He was treated at the scene and taken to the hospital. Incredibly, after the terrifying

22      ordeal, Vaniti witnessed officers exiting the apartment building laughing and high fiving each

23      other. It made her sick to her stomach.

24          5.42    Donald was left with significant injuries to his arm and foot and was left with scars

COMPLAINT FOR DAMAGES - Page - 14

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

on both. This terrifying experience had a significant impact on his life, caused him and continues to cause him extreme emotional distress and anxiety. Since that time, he has had horrifying nightmares, whole body twitching, and likely suffers from PTSD.

5.43   The above described actions of the Defendants and the agents of the Defendants were negligent, outrageous, and with deliberate and reckless indifference and disregard for the constitutional rights of Plaintiff Donald Brown and his safety and well being.

5.44   As a proximate result of Defendants and the agents of the Defendants' above-described wrongful actions and those learned through discovery, Plaintiff Donald Brown suffered pain, fear, anxiety, trauma, substantial emotional distress, disfigurement, disability, loss of the ability to enjoy life, lost earning capacity, loss of liberty and damage to property, and other special and general damages to be proved at trial.

## VI.    CLAIMS

### FIRST CAUSE OF ACTION
### (Federal Civil Rights Violation Under 42 U.S.C. § 1983)

6.1   By virtue of the facts set forth above, all the Defendants are liable for compensatory and punitive damages for the deprivation of civil rights to Plaintiff Donald Brown guaranteed by the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from unreasonable searches and entries. They did this by, among other things, entering and remaining on the property without a warrant or legal cause, obtaining a search warrant without probable cause and with false information, and executing the warrant in an unreasonable and violent manner.

6.2   By virtue of the facts set forth above, all the Defendants are liable for compensatory and punitive damages for deprivation of the civil rights of Plaintiff Donald Brown guaranteed by

COMPLAINT FOR DAMAGES - Page - 15

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from unreasonable seizures of his person. They did this by, among other things, performing the seizure in an unreasonable, dangerous and violent manner, and taking such actions without legal cause or justification.

6.3     By virtue of the facts set forth above, all the Defendants are liable for compensatory and punitive damages for deprivation of the civil rights of Plaintiff Donald Brown guaranteed by the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from the deprivation of his life, liberty, and property interest without due process of law.

**SECOND CAUSE OF ACTION**
**(State Law Claim – Outrage/Intentional Infliction of Emotional Distress)**

6.4     By virtue of the facts set forth above, the City of Lakewood, the City of Fife, the City of Puyallup, and the Pierce County Metro SWAT team, are liable to Plaintiff Donald Brown for compensatory damages for the tort of outrage.

**THIRD CAUSE OF ACTION**
**(State Law Claim – Negligence)**

6.5     By virtue of the facts set forth above, the City of Lakewood, the City of Fife, the City of Puyallup, and the Pierce County Metro SWAT team, are liable to Plaintiff Donald Brown for compensatory damages for negligence.

**VII.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests relief as follows:

7.1     Compensatory damages, including general and special damages;

7.2     Punitive damages from the individual Defendants on Plaintiffs' claims under 42

VAN SICLEN, STOCKS & FIRKINS
A Professional Services Corporation
721 45th Street Northeast
Auburn, Washington 98002
(253) 859-8899

U.S.C. § 1983;

      7.3     Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and to the extent otherwise permitted by law; and

      7.4     Such other relief as may be just and equitable.

DATED this 22nd day of September, 2021.

VAN SICLEN, STOCKS & FIRKINS

By: _/s/ Jeffrey O. Musto_____
    Jeffrey O. Musto, WSBA #52805

721 45th Street Northeast
Auburn, WA 98002
Phone: (253) 859-8899
Email: jmusto@vansiclen.com

Attorneys for Plaintiff

COMPLAINT FOR DAMAGES - Page - 17